v. County of Teller, 171361. Good morning. Ryan Gellman on behalf of the appellants in this matter. And may it please the court. Robert Vallina died in the custody of the Teller County Sheriff's Office. On September 2, 2014. He died at his own hand. He was a paranoid schizophrenic who was put in a cell by himself with the most common tools of detaining suicide. A bunk bed and a bed sheet. When Robert Vallina was taken into custody, he had a 14th Amendment right to receive medical care. And for a paranoid schizophrenic, this means suicide prevention measures. Because suicide satisfies the objective component of deliberate indifference, and the seriousness of suicide in terms of you die, means that prevention measures is what is required under the 14th Amendment. And for Teller County, they did not train their jailers in suicide prevention. Could I ask you about that? Yes. We're now left with the sheriff as the remaining party, correct? Yes. And it's the sheriff in the sheriff's official capacity. Yes. So this is, in effect, a municipal liabilities type claim. It is. And you just mentioned training. Is that the basis for your claim at this point? In other words, for municipal liability, you need to give us a policy or custom, and I see the training part, and I know the cases recognize that as one means by which to show that. Are we down to that, or is there more to it than just failure to train? For this matter, it is. It's the failure to train and the policy that Teller County had in not training their jailers in suicide prevention measures. Yes, that is what creates the Manelle liability in this case, is our argument. Now, Mr. Bellino was a frequent bot flyer in the Teller County jail. He had been there on multiple occasions, and each time he was there, he was diagnosed as a paranoid schizophrenic with suicidal ideations and suicide attempts. And under any of the standards that I argued in the brief, entering summary judgment on behalf of the sheriff was inappropriate, because the district court failed to accord the following facts in favor of the appellant. The first one, Teller County knew that its jail was not able to handle these mental health issues. In the record, this is demonstrated by the fact that the officer who arrested Mr. Bellino told Mr. Bellino's mother that he didn't think that they had the ability to take care of Mr. Bellino and had to call it in before they would take him in. He called it in. They took him in. Again, the second part that the district court ignored, that Mr. Bellino was a frequent flyer. They knew about his paranoid schizophrenia. They knew about his suicidal ideation, and they knew of his history of suicide attempts. And the other fact, that on June 5th of 2014, Robert Bellino was classified for general population in the Teller County jail with no suicide prevention measures. Now Mr. Bellino's competency was at issue when he was in custody, and so he was transferred to the Colorado State Mental Health Facility in Pueblo, Colorado. While there, he attempted to suicide. And that upon return from the Colorado State Mental Health Institution in Pueblo, in violation of their own policies, Teller County did not do another mental health evaluation. Next, that Robert Bellino's mother actually went to this jail with his prescribed medication, Halitol, one of the most powerful antipsychotic medications there are. And the jailers told her, this isn't a hospital, this is a jail, and sent her away. And then, after all of this, despite knowledge of Mr. Bellino's mental health issues, despite knowledge that suicide was foreseeable in his circumstances, Teller County then placed him in a cell, by himself, with a bed sheet and a bunk bed. All the while, they could have put him in a cell under continual observation, or any attempt at suicide could have been intervened. So are you arguing here that they had no policy, or that the policy they had was unconstitutional on its face? I'm saying... Or that the policy was unconstitutional as applied? I would argue both. I would argue that failing to have... Well, there were three there. Well, let's move backwards, I guess. I think as applied, it is unconstitutional. I think when we talk about, in any of these standards I argue, they come down to the fact that suicide is a health issue. And the conditions of confinement that the Teller County Sheriff subjected Mr. Bellino to were unconstitutional, because it denied him necessary medical treatment for a serious condition. Would you agree they had a policy? No, I would say they had no policy. They had no policy, no policy at all. I thought they said, when we have issues concerning our inmates or pretrial detainees' health or mental stability, we consult medical individuals and take guidance from them. Is that a policy? The policy at issue here is the lack of a prevention policy. Teller... Well, now I'm confused, because I thought you said earlier it was lack of training. So let me back up. So the policy is to not train. Well, they did have training, didn't they? There was a suicide component to their training. But it was a response... So you're saying that... So to say that there's no training isn't quite accurate. It sounds like what you're saying is there wasn't enough. Well, I think we have to differentiate between response training and prevention training. I think when we talk about response training, the horse is out of the barn a little bit. It's really about prevention, because when we talk about the medical condition of suicide, there's really no going back. It's not an issue of, let's say, a heart attack or a stroke where we can kind of go in... Let me ask you this. Did the district court find negligence? Or what did the district court find? What the district court found was that... It found a few things, but ultimately what it found was that when Mr. Valina was at the Colorado State Mental Health Facility in Pueblo, he met with a doctor, Dr. Petrescu, who's the subject of the next argument. And Dr. Petrescu diagnosed Mr. Valina as not paranoid schizophrenic and is just simply malingering. And so what the district court held is that Teller was entitled to rely on that opinion and therefore could not have been deliberately indifferent, because we failed to prove that they subjectively knew that Mr. Valina was a paranoid schizophrenic and subject to the risk of suicide. So on subjective versus objective indifference, you've got Kingsley versus Hendrickson, right? Yes. What did the court hold? In Kingsley, Kingsley is a seminal case in this matter, because prior to Kingsley, the assumption was, based off of Farmer, that the subjective deliberate indifference test that descends from the prohibition of cruel and unusual punishment under the Eighth Amendment applied to pretrial detainees, too. All right. And this is a pretrial detainee situation. Yes, it is. So there's been no determination of guilt, and therefore there can be no sentence. Yes. The issue is, is that in Kingsley, it found that when we were looking at it through the lens of punishment, that's wholly inappropriate under the Due Process Clause if you haven't been or are not supposed to be subjected to punishment. Right. The presumption of it, in a sense, requires that you be convicted or plead guilty before the Eighth Amendment. Before you can analyze it as appropriate punishment, there has to be a finding of guilt. Yes. That's not this case. And therefore, I state my question again. What did the district court find? Did it find negligence? Or what was the standard that the district court applied and found? Okay. So the district court, the Kingsley was a conditions of confinement case, essentially. It was about subjecting people to violence in jails. And Kingsley held that we have to use a reasonableness test. It's almost like a rational basis test, right? I'll tell you what. What's going to speed my question along so my colleagues have more time to ask questions. My question is, did the district court find negligence? Or what standard? Well, the district court didn't use the negligence standard. The district court didn't analyze the Kingsley issue whatsoever. So we're blank here on how the Kingsley determination, correct? Yes. So my argument here, and I make two arguments under Kingsley, and I think one is just objectively more strong, and I'll start with that, is that instead of using the subjective deliberate indifference test, it's now an objective test. Right. Okay. And we don't have to prove subjective knowledge of the condition. We just have to prove that they should have known there was a problem. And then I think the case that's most on point here — By the way, there's a split on the circuits on that point. Yes. The circuits haven't caught up with Kingsley. And I think that's where I cite Castro, excuse me, as the appropriate test. Because I think the Ninth Circuit did the best analysis and provides the clearest test for the Court. And I'll just recite right now the test from Castro. First, did defendant intentionally or recklessly create the conditions that were challenging? In this case, the answer is yes. The jailers classified Mr. Valina in accordance with their policy that didn't account for suicide prevention. So that's why they put him in a cell by himself with a bed sheet and a pillow. Well, okay, since I have an answer, let me tell you my concern, and then maybe you could address it. It seems to me that we probably do have to speak to the objective subjective issue in that because of this potential circuit split and because we haven't spoken to that issue, we probably need to, correct? Yes. And you would urge us to use the objective standard? Yes, I think that's what Kingsley demands. And here's my concern, and that is that the district court found Ensminger, am I pronouncing that correctly? Excuse me? Ensminger, is that? Yes. Ensminger liable of, it seemed to me mere negligence at most. And that's not going to get you where you need to get. No, and I think that's it. And therefore, that's why I ask you, and I know I keep beating, I'm practically beating you up on it, but I need to know what your argument is on that point. Did the district court make a finding that's greater than negligence? And if so, where do we find it? Where do we find that analysis? Again, I don't think the district court found a finding greater than negligence, and that's why I recite the facts. In the case that I believe the district court ignored, that would find, you know, under either the subjective or objective deliberate indifference test that we pass the threshold on summary judgment. And summary judgment, as we all know, kind of the ties on the inferences go to the non-moving party here. And what happened at the district court level is that we jump to Dr. Petrescu's intervening opinion, says that excuses everything, excuses all the other knowledge, and then we shut down, because there's no finding of subjective knowledge here because of Dr. Petrescu's opinion. Was Kingsley argued before the district court? Your Honor, Kingsley was not argued specifically in front of the district court. And is that an excessive force case? You're correct. And why are we talking about it in a 1983 constitutional violation case? Because Kingsley, the reason why we're talking about it here is because Kingsley clarifies that the tests that are promulgated under the Eighth Amendment do not apply to due process clause claims for pretrial duty detainees. And so now there's some argument. I think there was a footnote in an Eleventh Circuit opinion that I noted in my brief that there's a difference of opinion of whether or not Kingsley goes farther than excessive force claims. But my argument is that the due process clause applies to pretrial D&A detainees. And so it follows that Kingsley would follow to all Fourteenth Amendment claims when we talk about the objectiveness required to avoid a violation of due process rights. And so I think restricting Kingsley to just excessive force claims doesn't give the force that the court wanted Kingsley to have to say Farmer v. Brennan is not the test. Counsel, how can you show that additional suicide prevention training would have made a difference when the medical staff at Colorado Mental Health returned him to the detention center and said he wasn't suicidal? I think how we demonstrate that is, one, through our experts, which say that, you know, Teller fell below the standard of, you know, shockingly fell below the standard of care when it came to accounting for prevention measures. Well, no. He comes back. Dr. Petresco says he's not suicidal. Even if there was ample prevention training, that's, that's, that was how, that was the expert report coming back. So how would training make any difference? I'm almost done. If I may extend my time to answer this question. Go ahead. The reason why extra training would make the difference is because the jailer's staff would be able to look at the whole picture here instead of an isolated opinion from a doctor who spent a grand total of 45 minutes with Mr. Valino. To look at the entire picture. And I think when we talk about this case posture, I think we have the ability to argue to a jury that the whole picture should have been considered by the jailers and it wasn't because of a failure to train on prevention measures. Could I just ask a really quick question? And that is, does the record show whether Mr. Valino was put on suicide watch when he returned from Colorado Mental Health? It shows, and he was not. Thank you, Your Honor. Thank you. Good morning. Good morning. May it please the Court, Kathy Habner Greer on behalf of the Teller County Sheriff. The district court properly granted summary judgment to the Teller County Sheriff, the only remaining defendant in this case. The order is proper under the law and under the evidence. The court applied a deliberate indifference standard to the federal constitutional claims. And the court also found that in the wrongful death claim that was brought against the sheriff, that there was no wrongful act. Now, that would seem to be closer to a negligence type of standard. We believe that based on this court's rulings in Cox v. Glantz and in Rife 1 and 2, that this court appropriately is still following the deliberate indifference standard for claims that are based on failure to provide medical care to a pretrial detainee. We believe that the Kingsley case should be restricted to its context, which is a case of alleged excessive force by detention officers or jailers. And the Supreme Court did nothing in that case to indicate that it was overturning Farmer v. Brennan. And it certainly did nothing in that case to indicate that it was overturning the Daniels v. Williams case and imposing a pure negligence standard for Section 1983 claims. So if we follow the deliberate indifference standard, then you would say the sheriff and all those at the jail are innocent of any wrongful act or unconstitutional act. Because they did not know he was suicidal, and they had to know he was suicidal in order to be deliberately indifferent? I think yes, Your Honor. Under the subjective standard, the defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw that inference. And that's from Farmer v. Brennan, but it's also in the Cox case. Right. I heard a new fact here. I read the briefs and I didn't read this. Is it true that the plaintiff in this case did attempt suicide when he was being examined in the mental health facility? Absolutely not. So that did not occur? That did not occur. He was out there for determination of competency to stand trial, right? Yes. Mr. Valina was arrested on May 27, 2014, and within a couple of weeks, his lawyer requested and a judge ordered that a competency evaluation be made. At the time that he came to the Teller County Detention Facility and went through the screening process of the medical people, he denied any suicidal ideation. He denied that he had ever attempted suicide. And it's always important to recognize that when you're talking about an independent group contracting, like the CHC group, which is the medical provider, and you have the Teller County Detention Facilities, the medical people are not allowed by HIPAA to provide diagnoses or specific medical information about one of the pretrial detainees. The argument was made here, though, that this gentleman had been in court in this jail before. And I think, I'm not sure I'm quoting counsel correctly, but I think he said that the jailers well knew that he was suicidal. They did not. That information is not shared with any of the detention officers. But, no, he's arguing, as I understood it, not whether it was shared, but that they had actual experience with him, that they actually knew, and that his mother or grandmother had come in to give him, to bring medication that was denied to him. That is what Mrs. Valina testified, that she did try to provide medication. It would not be appropriate for a jail to simply receive something that is purported to be some kind of medication from an outsider, even if it is a family member. But what do you do? I mean, certainly, if he was in that type of a status where he was receiving Haladol, he should be receiving it, quite frankly. So if you have that situation, does the family go to someone else and not the jailer? What is the procedure? No, Your Honor. The medical people at the jail make the determination. Mr. Valina said he was not on any medication. He also refused. So when a family member comes and says he is on this medication and here is his drug, what is the procedure? Who is that individual sent to see? The medical people at the jail, the CHC people, inquire of him as to his health condition. He refused to release any information from the place where the hospital that he had left before his arrest. So in the medical records, there is what appears to be a post-it note where he denied any information. But again, answer my question. If they believe that he is in need of medication, the medical people can prescribe the medication for him. If Mr. Valina refuses to take medication that the mental health or medical people believe he should take, then they would need to go to a court to have an order to have him take medication. They cannot force medication on someone. Would it occur, to get to the point of what I'm trying to find out, if the individual, the family member, has the medication that the inmate is taking and they come to the jail and the jailer says, I will not give this individual directly myself these medications, does the jailer say, but you can go down the hall and talk to our medical people and see what should be done? Mrs. Valina certainly had the opportunity to be able to talk to any of the medical people. Was she told that she could do that? Your Honor, I don't know. That is not part of the record. And there was never any person who was identified as a – But you see my problem. Yes, I do see your problem. But if you look at exhibit – And do you see my problem as well, which is the issue of whether there was actual knowledge on the part of the jailer that this gentleman was – had previously been suicidal, that they had actual experience with him regarding this particular condition? They did not, Your Honor. And in exhibit – Is there anything in the record that supports that? Yes, there is. Exhibit AA is the affidavit of Sue Campbell, who was the LPN who met with Mr. Valina both before he went to CMHIP, and she was the person who received the discharge paper from Dr. Petrescu on August 29th of 2014. And it indicates that she interviewed him when he returned to the hospital – or when he returned to the jail from the hospital, that she made an assessment that she talked to him, and that he had never been – I think you're answering my question. Let me clarify my question. Is there anything in the record that supports counsel's proposition, if I understood it correctly, that these – that this gentleman had been in jail before, and that these jailers knew from that previous experience that this man was schizophrenic and suicidal? The affidavit of Ms. Campbell contradicts the – that allegation and states specifically – Well, she specifically states that he was never on suicide watch during any of his incarcerations at the Taylor County Detention Facility. She said at any of his incarcerations, and that he was never – he never demonstrated suicidal ideation during the summer of 2014, and that he never was on suicide watch during that time period. But wasn't there information in the records that he had been suicidal at some point? Maybe not within the jail, but that he had been suicidal in the past. I think there is within the Woodland Park police records, which are not part of the Taylor County records, and within some of the other medical records of other hospitalizations, but that was not shared with anyone in Taylor County. So you're – let me just be clear. So are you saying, then, that as far as the detention facility records are concerned, there's nothing whatsoever to indicate that Mr. Valina had ever been suicidal? Is that what the record shows? Your Honor, I don't know whether there is anything in any of the medical records to ever indicate that he had been. I'm just asking the record that we have to work with here. Is there anything there to show, or at least put the detention center on notice as an institution, that he'd been suicidal? There is nothing in the records of the Taylor County Detention Facility. The records before us. Why don't we use those words? In the records before you, there may be, with respect to the Pikes Peak Medical Center, because of a hospitalization and statements he made there, but there's nothing that is in the record of what was provided to Taylor County or its medical facility. But the other factor that I think needs to be recognized is that if someone at some time in their life has been suicidal, that does not require that every time that person would go to a detention facility or a jail, that they be placed on suicide watch. That would be an inappropriate intrusion into that person's rights to be free from being placed on a suicide watch. So that issue has to be examined time after time whenever a person comes into a facility. And when Mr. Valina came back on the Friday night of August 29th of Labor Day weekend, with the discharge summary from Dr. Petrescu saying that he was not suicidal and not ordering any medication, and Sue Campbell recognized that, talked to him, and he confirmed he was not on any medication, and she placed him in the general population. Now, at that time, Mrs. Valina had telephone conversations with Mr. Valina on the 30th. She met with Mr. Valina in person at the jail on the night, Sunday night, August 31st, and she had a telephone conversation with her son on September 1st. And she testified in her deposition, which is, I believe, Exhibit Q, that she did not personally see anything that caused her to believe her son was suicidal, that she did not tell anyone at the jail that she believed that he was suicidal. And the last conversation that she had with her son the night of September 1st, Labor Day, was one that she described as not being a good conversation, that she got mad at her son, and that was the last time she talked to him. When did she bring the medication in? It was in May. She claims to have brought it in in May. We don't have any independent verification. So it was before he ever went to the state mental hospital. And you, in response to Judge Briscoe, you were describing the procedures that the jail would follow under those circumstances. Is that, again, referring to this record, record in this case, do we have in the record those procedures and that they were followed? Yes, we do. We have the medical record that is definitely in the record. The medical progress notes are Exhibit F, and those detail both the return of Mr. Bellina and placing him in the general population, but it details also all of the earlier notes. In May and early June, Mr. Bellina made six medical complaints, but they were about genital and urinary tract issues. They were all checked out, but he made no mental health complaints at any time while he was at Teller County in the summer of 2014. And all of the policies were followed by the detention officers. And I would just, running out of time, so I would rely on our briefing and ask. One point, if I may, Judge Briscoe. Sure. Just one question. My notes stated that Teller County possessed, in their possession at the time he was booked, medical records from Bellina's previous incarcerations showing a diagnosis of schizophrenia, prior suicide attempts, and prescribed medications. Are my notes incorrect? The medical people may have had that, Your Honor, but the detention officers would not have. And the medical people did not. So you're segmenting the medical officers and the detention officers. Because of medical privacy. And as one last point. Thank you. Thank you. Thank you, Your Honor. And I believe that there is, even under the Kinkley standard, there is no basis for holding the sheriff liable. Thank you. Thank you. Thank you both for your arguments. The next case.